THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JORGE TIRADO DE SANTOS, Defendant and Appellant.

No. CR-64-10.      Decided November 6, 1964.

*José M. Cueto* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Defendant-appellant was convicted by a jury of the offense of attempted rape. There is no question that our laws provide for and punish that offense in degree of attempt, *People* v. *Marrero,* 57 P.R.R. 699, 701 (1940).

The attempted rape in this case did not occur as a result of a common love affair, but on the occasion when a lady used a taxi to go from one place to another. Defendant-appellant was the operator of the taxi; the aggrieved party was the passenger.

Appellant assigns before us the following two errors:

1. "The court erred in finding defendant guilty on the evidence presented on the offense of attempted rape."

2. "The court erred in not permitting policeman Ernesto Colón to testify on the statements made by defendant when

he was questioned at police headquarters on the facts of the case."

■ The evidence shows the following: Raúl Morales and Bárbara Leisey went to a birthday party in the house of Luz Marta Caraballo in Puerto Nuevo. It was the birthday of a child, the son of Luz Marta, to whom Morales and Bárbara were taking a present. Morales and Bárbara are not, or were not, married at the time, but lived together as husband and wife. They lived in Los Ángeles urbanization. Morales is a musician and at that time was working in the Mona Lisa night club playing the piano. Morales had to leave the party early, at 9:45 p.m., because he had to work. He told Bárbara to stay a while in Marta's house and enjoy the party, and made arrangements for the taxi to take her later to the Mona Lisa Club to join him. Defendant was also invited to the party. He has been a friend of Luz Marta and her family for many years. He was courting a sister of Marta and visited the house frequently. Morales testified that he knew that defendant was a taxi driver, and when he left the party he said to the latter: "Please take the lady to my working place and I'll pay you there," to which defendant answered that it was all right. Morales left in his car for his work. Defendant asked Bárbara to dance with him and she danced with him once. She also danced once with the child whose birthday was being celebrated. Bárbara testified that she only danced twice at the party. Around 11:30 p.m. Bárbara wanted to leave in order to join Morales at his place of work. She left in the taxi operated by defendant and told him to take her to the Mona Lisa Club. Bárbara sat in the front seat of the car. On cross-examination she explained that she did it because defendant had been recommended to her as a trustworthy person. Tr. Ev. 23.

Since in this recital we now come to the key events, we shall make a summary following as closely as possible

the witness' words. The questions may be inferred from her answers, which are not essential to understand the events.

The witness was asked if she told the taxi driver where she wanted to go. She answered that she did, that she told him to take her to the "Mona Lisa". She explained that she sat in the front seat because the driver "had been recommended to me by the lady of the house." They left. When she realized that they were not on the route to the Mona Lisa Club, she asked the driver where he was taking her. He answered, "Let's go for a short ride." She said no, that she was going to the "Mona Lisa". The driver then started to put his hands on her legs. He took one of her hands by force and put it on his member. She was smoking, and testified that "I told him not to do that because I was going to burn him." Then "I recoiled," she testified. He drew toward her and started to put his hand under her clothes. She took out his hand by force. They arrived at a place which was very dark. Some people came out and the defendant said to them, "Give me a room, give me a room." She protested, "No, no, no!" Defendant then drove away. She thought that he was on the Guaynabo road. Again she protested that that was not the road to the "Mona Lisa". The driver kept going and further ahead he stopped the vehicle at the entrance of a residence; he entered in reverse. She thought that he was going to turn back in order to take her to the "Mona Lisa"; on the contrary, defendant turned off the lights and got out of the car. He came to the witness' side, opened the front door, and took her out of the vehicle by force. He tried by force to make her enter the back seat of the car. He said, "Get in, get in," and they struggled. She offered resistance, and as a result of the struggle she injured her knee. The witness saw cars going by and started to scream "so that someone would hear me and come, but every time I screamed he covered my mouth with his hand,

like this." She continued to offer physical resistance and to scream. At last he said, "All right, let's go." When they were near the Mona Lisa Club, the car stopped at the traffic light and the motor went dead. She managed to get out of the car and started running.

The witness headed for the Mona Lisa Club to tell Morales what had happened. Morales saw her through the glass of the establishment when she arrived, and described her as follows: "I saw her all unkempt, crying, bleeding by the mouth, and her dress all crumpled." When asked what he did, Morales further testified: "I got up from the piano and I went out and asked her, 'What's the trouble?' She said, 'That man, he has injured me.' I tried to calm her because she was very excited. I made her sit in my car and gave her a glass of water. Then I said to Pérez, the manager, 'Let me take my wife home.' " Morales further testified that Bárbara was shaking and crying, that he said to her "Calm down, after you calm down, tell me."

On cross-examination the witness reiterated that defendant took her out of the car by force; that he tried to make her enter the back seat also by force, but that she resisted; that at that moment she received a blow and started to scream; that he ill-treated her and covered her mouth; that he could not rape her because she "was struggling."

The prosecution witnesses were the aggrieved party, Raúl Morales, and policeman Ernesto Colón. The policeman investigated the facts upon receipt of the complaint. He testified that he saw the wounds on her mouth and on the knee of the aggrieved party. Defendant's evidence consisted in the testimony of Luz Marta Caraballo, and the defense also called policeman Colón. Luz Marta testified that Bárbara's husband had to leave for his work and asked the defendant to take her home. She testified that Bárbara and the defendant danced all the time; that Bárbara had several drinks; that defendant has been a friend of hers (of Luz

Marta) for about two or three years and that he visited her house frequently.

Apparently the jury did not give credit to the testimony of Luz Marta Caraballo. The record gives the impression that because of her friendship with defendant she tried to defend him. There is sufficient basis in the evidence to warrant the conviction. The attempt, with the intent to commit the offense and the aptitude to commit it, was established. The first error was not committed.

■ The second error assigned, based on the trial court's refusal to permit the policeman to testify on what defendant said when the policeman questioned him at headquarters, was not committed either. That would have been a self-serving declaration and it was properly excluded. *Galanes* v. *Galanes*, 54 P.R.R. 842, 847 (1939); *Méndez* v. *Martínez*, 24 P.R.R. 224, 231 (1916); *Herman* v. *United States*, 48 F.2d 479; *Busch* v. *United States*, 52 F.2d 79, *cert. denied*, 284 U.S. 687; *State* v. *Harris*, 64 S.W.2d 256; *Barnes* v. *Commonwealth*, 32 S.W.2d 16; 1 Wharton, Criminal Evidence, § 285; Fricke, California Criminal Evidence 141 (1960); Ortiz, 9 *Rev. Jur. U.P.R.* 130.

It is always painful for the courts to impose and affirm penal sentences, but we cannot escape our duty to enforce the laws and, in this specific case, to guarantee that women in Puerto Rico may use a taxi without the risk of being raped or attacked by the operator of the vehicle. The Taxicab Regulations of the Public Service Commission provide that "Every operator [of taxicab] shall observe correct and respectful conduct toward the public and passengers." 27 R.&R.P.R. § 72–441.

The judgment appealed from will be affirmed.